*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. REYES, Minor.

UNPUBLISHED
June 29, 2023

No. 364300
Jackson Circuit Court
Family Division
LC No. 12-000072-NA

Before: GLEICHER, C.J., and RICK and MALDONADO, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to his daughter, JR. His rights were terminated under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist). We affirm.

## I. FACTUAL BACKGROUND

In a petition filed on October 9, 2020, the Department of Health and Human Services (DHHS), asked the trial court to take jurisdiction over JR because mother neglected or refused to provide proper care for her and because mother's home was unfit for children.[1] At the time, a putative or legal father had not been identified. Respondent was later identified as JR's biological and legal father at a dispositional hearing held on May 25, 2021. DHHS amended the petition to add father as a party on August 17, 2021, and alleged that JR should remain under the jurisdiction of the trial court because father neglected or refused to provide proper care for her.

A joint adjudication and dispositional hearing occurred on September 28, 2021. Counsel for DHHS informed the trial court that father had been incarcerated for a 60-day term. A Child Protective Services (CPS) agent testified that before he was incarcerated, father had participated in two court-ordered parenting-time sessions. DHHS had not yet started to offer father services. The trial court continued placement of JR with DHHS and adopted a case service plan for father, under which he had to partake in parenting classes, complete a psychological evaluation and a substance-abuse evaluation, and provide verification of housing to DHHS. The trial court ordered

---

[1] Mother does not participate in this appeal.

DHHS to make reasonable efforts to preserve and reunify the family. The trial court also ordered supervised parenting time for father upon his release from incarceration.

Just over a year later, on October 13, 2022, DHHS filed a supplemental petition to terminate father's parental rights. The termination hearing was held on November 1, 2022. At the hearing, a foster care case manager testified that father was initially ordered to complete a psychological evaluation and follow any corresponding recommendations, complete a substance-abuse assessment and follow any corresponding recommendations, participate in parenting classes, and maintain appropriate housing. Father completed a psychological evaluation in January 2021. The evaluating psychologist had concerns about father's ability to parent and recommended that he address his substance-abuse issues. She did not find father a suitable candidate for reunification.

A foster care worker testified that father loved JR very deeply, but that there was no clear indication of an existing bond between them. Father was always appropriate with JR, but there remained concerns about his inconsistency in attending parenting time. Father also had trouble completing drug screens, allegedly because his work schedule interfered with his ability to make it to screenings. DHHS alleged that it was in JR's best interests to terminate father's parental rights because he made minimal efforts to build a relationship with JR. Furthermore, father inconsistently complied with reunification services. DHHS believed that there was no reasonable likelihood that the conditions leading to JR's removal would be resolved within a reasonable amount of time.

The trial court found that father was slow to engage with JR and that even when he did, he missed more than half of his parenting-time visits. This caused the court to conclude that father's level of engagement with JR was halfhearted at best. The court observed that JR had been with the same foster parents since entering DHHS's custody and that her foster parents were willing to provide her with permanency. It was apparent to the court that JR shared a bond with her foster parents. The trial court also opined that reasonable efforts to preserve and reunify the family had been unsuccessful. The court ultimately found that clear and convincing evidence existed to support the termination of father's parental rights pursuant to MCL 712A.19b(3)(c)(*i*) because the conditions leading to adjudication continued to exist and there was no reasonable likelihood that father would rectify them within a reasonable time. The trial court also found that termination of father's parental rights was in JR's best interests. The trial court noted that JR had been in foster care for over two years and reiterated that she was bonded with her foster parents, who were committed to providing her with permanency, stability, and finality. Comparatively, the trial court found that father could not provide JR with permanency, stability, and finality within a reasonable time. Following the hearing, the trial court entered an order terminating father's parental rights. This appeal followed.

## II.  ANALYSIS

### A.  BEST INTERESTS

Father argues that the trial court erred by finding that termination of his parental rights was in JR's best interests.[2]  We disagree.

"Whether termination of parental rights is in the best interest of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review the trial court's findings and ruling that termination is in the child's best interests for clear error. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (quotation marks and citation omitted).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (citation omitted).  To determine whether termination of parental rights is in a child's best interests, the court should consider factors including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (quotation marks and citation omitted).  The trial court may also consider the child's well-being while in care and the possibility of adoption. *Id*. at 714 (citation omitted).  "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

The trial court found that termination of father's parental rights was in JR's bests interests for two main reasons.  First, after only ever living with one foster family for two years, DHHS presented evidence that JR was well bonded with her foster parents.  On the other hand, DHHS did not observe, nor did father ever demonstrate, any indication of a bond with JR.  Father missed more than half of the offered parenting-time visits, suggesting that he was not fully dedicated to developing a bond with JR.  Second, the trial court found that father failed to show that he could provide JR with permanency, stability, and finality.

We agree with the trial court's findings in this matter.  After being in foster care for over two years, JR is entitled to security and permanency.  Father is unlikely to be able to provide an adequate level of stability and security to JR given that he failed to gain the necessary parenting skills that the case service plan was designed to help him develop.  Specifically, father's failure to

---

[2] Father does not challenge the existence of statutory grounds for termination.  As a result, we may presume that the trial court did not clearly err by finding that the unchallenged statutory grounds were established by clear and convincing evidence.  See *In re Sherman*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds *In re Trejo*, 462 Mich 341, 353; 612 NW2d 407 (2000).  Nevertheless, having reviewed the record, it is apparent that the trial court did not clearly err by finding clear and convincing evidence in support of termination under MCL 712A.19b(3)(c)(*i*).

address his substance-abuse issues, despite knowing that noncompliance could result in termination, demonstrated father's lack of investment, love, and affection for JR. A lack of meaningful participation in a case service plan is generally viewed as "evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App at 710. There was also no evidence that JR preferred father over the foster parents or strongly bonded with father. Additionally, given the likelihood of neglect and father's inability to properly parent JR, there is a risk of harm to the child if returned to father. On this record, it cannot be said that placing JR in father's custody would be in her best interests. For all these reasons, we conclude that the trial court did not clearly err by finding that termination of father's parental rights was in JR's best interests.

## B. REUNIFICATION EFFORTS

Father next argues that the trial court erred by finding that DHHS made reasonable reunification efforts. We again disagree.

To preserve an argument that DHHS failed to provide reasonable efforts toward reunification, the father must "object or indicate that the services provided to them were somehow inadequate." *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Generally, a father must object at or around the time the court adopts the reunification service plan. *In re Atchley*, 341 Mich App 332, 336-337; ___ NW2d ___ (2022) (quotation marks and citation omitted). "However, even if a parent does not object or otherwise indicate that the services provided were inadequate when the initial case services plan is adopted, such an objection or challenge may also be timely if raised later during the proceedings." *Id*. at 337. Father did not object or otherwise indicate that the services provided were inadequate during the lower court proceedings. Accordingly, the issue is unpreserved, and review is for plain error affecting father's substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011).

"To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citations omitted). "A 'clear or obvious' error under the second prong is one that is not 'subject to reasonable dispute.' " *In re Pederson*, 331 Mich App at 463, quoting *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). Reversal is only warranted when the plain error "seriously affect[ed] the integrity, fairness, or public reputation of judicial proceedings." *In re Mota*, 334 Mich App 300, 311; 964 NW2d 881 (2020).

"Under Michigan's Probate Code, the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich at 85-86. Although "[DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of fathers to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. To prove a claim for lack of reasonable efforts, a father must show that he or she would have fared better

had DHHS offered different or additional reunification services. *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005).

A review of the evidence supported the trial court's finding that father failed to consistently participate in services, other than completing the psychological evaluation and substance-use disorder intake designed to address barriers to reunification. The results of father's psychological evaluation indicated that if father remained sober and abided by probation, he may have been suitable for visitation privileges. DHHS also provided father with drug screens, but father participated in less than 50% of scheduled drug screens. Consequently, he failed take advantage of a self-disciplinary tool meant to encourage sobriety. Father tested positive for cocaine three times in June 2022, and DHHS provided him with a substance-abuse reassessment and substance-abuse services, from which he was unsuccessfully discharged due to nonparticipation. Accordingly, the services provided by DHHS to help father maintain sobriety and address substance-abuse issues were responsive and reasonable; it was father who failed to take advantage of them.

DHHS also provided father with parenting classes and parenting-time visits to help him improve his parenting skills and foster a bond with JR. Although father completed parenting classes, he failed to develop a bond with JR. He only attended 15 out of 25 scheduled parenting-time visits. Although father acted appropriately with JR when he did attend parenting time, he did not take advantage of every opportunity to practice his parenting skills and bond with her. In addition, father canceled a visit with JR's early childhood specialist, effectively indicating a disinterest in her development and health. The services provided by DHHS to help father foster a bond with JR and improve his ability to parent her were responsive and reasonable. Father simply failed to take advantage of them.

Ultimately, DHHS made reasonable efforts to reunify father with JR. Father was given a meaningful opportunity to participate in and benefit from those services. Given his failure to fully take advantage of services provided, father cannot show that he would have fared better had services continued or other services been provided. Thus, contrary to his argument, the trial court did not clearly err by finding that DHHS made reasonable efforts to reunify the family.

## III. CONCLUSION

The trial court did not err by finding that termination of father's parental rights was in the child's best interests, and that the reunification efforts made by DHHS were reasonable. Accordingly, father is not entitled to relief.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado